**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

14PNWDC LLC, *et al.*,

    *Plaintiffs*,

  v.

ELMER ZAPATA-MERCADO, *et al.*,

    *Defendants*.

Civil Action No. 26 - 1342 (LLA)

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs 14PNWDC LLC and 14PDC LLC brought this action against Elmer Zapata-Mercado, Shiza Arshad, and Annaliese Deshommes, alleging housing discrimination claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and the D.C. Human Rights Act, D.C. Code 2-1402.21 *et seq.* ECF No. 1. Pending before the court is Plaintiffs' emergency ex parte motion for a temporary restraining order. ECF No. 9. For the reasons explained below, the court denies the motion.

   **I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs own several properties at P Street Flats Condominium, 14 P Street NW, Washington, D.C. 20001. ECF No. 1 ¶ 9. Plaintiffs' sole beneficiary owner and manager is "White/Caucasian" and is over the age of forty. *Id.* ¶ 10.[1] Defendants are two board members and one member of Plaintiffs' homeowners' association (the "Association"). *Id.* ¶¶ 11-13. Plaintiffs

---

[1] Plaintiffs' complaint refers to a single "Plaintiff," presumably the owner and manager of 14PNWDC LLC and 14PDC LLC. *See generally* ECF No. 1. The court will refer to Plaintiffs separately from their owner and manager, as the complaint lists only the limited liability companies as Plaintiffs.

are "in good standing of the Association and ha[ve] complied with all material obligations necessary to access housing, common elements, and services." *Id.* ¶ 17.

Plaintiffs allege that from September 2025 through at least April 2026, Defendants engaged in a "pattern of discriminatory and retaliatory conduct" based on Plaintiffs' sole beneficiary and owner's protected characteristics and in response to his protected activity. *Id.* ¶ 18. They allege that Defendants "selectively enforced Association rules," "threatened penalties and legal action against Plaintiff[s]" in a discriminatory manner, and "denied, delayed, or conditioned Plaintiff[s'] access to common areas, amenities, services, repairs, or reasonable accommodations." *Id.* ¶¶ 19-20.

On January 11, 2026, Plaintiffs' sole beneficiary owner and manager issued a "formal notice" describing derogatory communications he had received from the Association's board members about his race and age, as well as the "coordinated exclusion from group communications discussing him and his property interests." *Id.* ¶ 26. The notice alleged that the Association's president, Mr. Zapata-Mercado, had made statements referring to Plaintiffs' owner as a "white asshole," accusing him of "caucasity," labeling him "the oppressor," and asserting that "racism against white people doesn't exist." *Id.* ¶¶ 26-27. Other board members "celebrated and encouraged" those statements. *Id.* ¶ 27. The notice also alleged "interference with lease negotiations when discriminatory group-chat messages, viewed by a tenant during renewal discussions, were leveraged against Plaintiff[s]," causing around $21,600 in damages. *Id.* The notice also stated that, after Plaintiffs' owner objected to not being provided with "clear Association business information," Defendants levied personal attacks at him, including stating that he "'pays his [much younger] girlfriend to date him' because he is so old as 'literally a 40+ year old man.'" *Id.* The notice additionally identified other "procedural abuses and retaliation" in

the Association's governance, such as "adverse board actions without proper notice" and a "special membership meeting" called by Mr. Zapata-Mercado to reverse a vote retaining Plaintiffs' owner as a board member. *Id.* ¶ 29.

Plaintiffs filed suit on April 20, 2026, alleging that Defendants had violated the Fair Housing Act and the D.C. Human Rights Act by discriminating and retaliating against Plaintiffs' owner based on his age and race. *Id.* ¶¶ 32-61.  Plaintiffs seek compensatory damages, injunctive relief, and punitive damages. *See id.* at 16-17.

On May 26, 2026, the Association's board approved "immediate fines" against four of Plaintiffs' units and "continuing daily fines of $200 per unit per day beginning May 27, 2026" until Plaintiffs submitted lease documents for Plaintiffs' units, ECF No. 9-1, at 3, in accordance with the Association's bylaws, ECF No. 11, at 1-2 ¶ 3.  On June 1, 2026, after Plaintiffs provided redacted copies of the leases, the board rejected them as noncompliant and stated that the daily $200 fine would resume "unless complete lease copies were provided or vacancy could be demonstrated."  ECF No. 9-1, at 4; *see* ECF No. 9-2, at 11-12.  The board also announced a separate $10,000 "special assessment for legal expenses and counsel" to be allocated across all units and collected over six months beginning July 1, 2026.  ECF No. 9-1, at 4; *see* ECF No. 9-2, at 4.  That same day, Plaintiffs filed an emergency ex parte motion for a temporary restraining order preventing Defendants from "imposing, accruing, recording, collecting, or enforcing" the daily $200 fine against each of Plaintiffs' four units.  ECF No. 9, at 1.  The motion is fully briefed. ECF Nos. 9, 11, 13, 14.

## II.    LEGAL STANDARD

"Temporary restraining orders and preliminary injunctions are 'extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden

of persuasion.'"  *Lofton v. District of Columbia*, 7 F. Supp. 3d 117, 120 (D.D.C. 2013) (alteration in original) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).  To receive a temporary restraining order or a preliminary injunction, the moving parties must show (1) "that [they are] likely to succeed on the merits," (2) "that [they are] likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [their] favor," and (4) "that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## III.    DISCUSSION

Plaintiffs seek a temporary restraining order enjoining Defendants from enforcing the fines against them, making any collection efforts based on those fines, and engaging in retaliatory or discriminatory enforcement action related to this suit.  ECF No. 9, at 3.  Plaintiffs also seek relief providing that "reasonable redactions or alternative disclosures concerning tenant leases shall suffice without prejudice to either side's right to seek further Court guidance," and seek to enjoin Mr. Zapata-Mercado and Ms. Arshad from participating in any Association board actions relating to this suit.  *Id.*  The court concludes that Plaintiffs have failed to carry their burden to establish irreparable harm to receive a temporary restraining order.  *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (explaining that a "movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors . . . merit such relief).[2]

---

[2] In their motion, Plaintiffs asked that the temporary restraining order be issued ex parte, and their counsel represented that Plaintiffs had not provided Defendants notice of the motion because "the relief sought is directed at preventing immediate enforcement escalation."  ECF No. 9-5, at 1.  But Defendants' counsel received notice of the motion when Plaintiff's counsel filed it via the

(*continued on next page*)

"[P]roving 'irreparable' injury is a considerable burden" and requires "proof that the movant's injury is '*certain, great and actual*—not theoretical—and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm.'" *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (quoting *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). It is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wis. Gas Co.*, 758 F.2d at 674. Plaintiffs principally allege that they will be fined approximately $24,000 per month without the court's intervention. ECF No. 9-1, at 3, 10. These fines, while substantial, are plainly compensable, and Plaintiffs do not explain how these financial injuries would cause them irreparable harm. *See Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1235 (D.C. Cir. 2025) (considering whether economic loss was "so great as to threaten [the movant's] continued existence"). Plaintiffs assert that their alleged harm is not merely economic because the fines and special assessment fee are "coupled with property-enforcement tools and coercive pressure on protected tenant and leasing relationships." ECF No. 9-1, at 11. Specifically, Plaintiffs "anticipate that Defendants will use the counsel-reviewed non-compliance notice and fines to pursue or threaten liens, foreclosure steps, bond demands, collection referrals, and special-assessment-funded legal enforcement." *Id.* at 3. But Plaintiffs have failed to show that any enforcement action, foreclosure, or some other irreparable loss of property is either certain or imminent. *Cf. Patriot-BSP City Ctr. II v. U.S. Bank Nat'l Ass'n*, 715 F. Supp. 2d 91, 95-96 (D.D.C. 2010) (granting temporary restraining order where the foreclosure sale was scheduled for the next day and the plaintiffs demonstrated "a substantial

---

CM/ECF system, ECF No. 11, at 1, Defendants have since opposed the motion, ECF No. 11, and this order will be served on all parties via CM/ECF, all of which suffice to moot any request for ex parte relief.

likelihood that they w[ould] face actual and imminent harm if the court [did] not enjoin the foreclosure sale"). Rather, Plaintiffs allege only that they are subject to ongoing daily fines and that they "anticipate" further enforcement actions. ECF No. 9-1, at 3; *see* ECF No. 14, at 4-5 (acknowledging that they have not yet been subject to collection remedies for failure to pay their current balances). And even if Defendants *had* initiated collection efforts, Plaintiffs do not explain the irreparable harm—for example, to their business's existence, *see Clevinger*, 134 F.4th at 1235—that would result from such escalations. Likewise, Plaintiffs do not identify irreparable harm associated with paying the Association's assessment to cover additional legal fees. *See* ECF No. 14, at 6.

Plaintiffs additionally argue that they will be irreparably harmed if they are forced to choose between paying the fines and producing lease documents containing sensitive tenant data to the Association. *See* ECF No. 9-1, at 11. But, aside from conclusory claims that "loss of trust and goodwill associated with misuse or exposure of sensitive private client information may be irreparable," *id.*, Plaintiffs do not explain how they would be irreparably harmed by sharing unredacted lease information with the Association. What is more, while the parties vigorously dispute whether Plaintiffs have a valid reason for redacting certain information, *see* ECF No. 11, at 3; ECF No. 13, at 4; ECF No. 14, at 5, it appears that Plaintiffs still have the option to eliminate the fines by "providing good faith bases for why certain redactions need to be applied," ECF No. 11, at 3.

Finally, Plaintiffs allege that Mr. Zapata-Mercado and Ms. Arshad are conflicted from participating in Association board actions relating to this lawsuit and that their "continued participation . . . creates a serious risk that Association processes will be used to increase pressure on Plaintiffs during this litigation." ECF No. 14, at 7-8; *see* ECF No. 9-1, at 13. Plaintiffs appear

to argue that the Association will continue imposing fines against them or escalate enforcement against them, but, for the reasons already explained, Plaintiffs cannot establish irreparable injury based on the mere possibility of Defendants' imposing additional fines or engaging in collection remedies.    And Plaintiffs do not identify any other irreparable harm stemming from Mr. Zapata-Mercado's and Ms. Arshad's continued participation on the board.

\*        \*        \*

Because Plaintiffs have failed to show irreparable harm absent preliminary relief, they are not entitled to a temporary restraining order.  *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Emergency Ex Parte Motion for a Temporary Restraining Order, ECF No. 9, is **DENIED**.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   June 8, 2026

7