**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

14PNWDC LLC and 14PDC LLC,

Plaintiffs,

v.

ELMER ZAPATA-MERCADO, et al.,

Defendants.

Civil Action No. 26-1342 (LLA)

**DECLARATION OF THOMAS ELIOPOULOS II IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Thomas Eliopoulos II, declare as follows:

1. I am the manager and sole beneficial owner of Plaintiffs 14PNWDC LLC and 14PDC LLC. I am over 18 years of age. I have personal knowledge of the facts stated in this declaration and, if called as a witness, could testify competently to them.
2. 14PNWDC LLC owns Units C01 and 402, and 14PDC LLC owns Units C02 and C03, at the P Street Flats Condominium, 14 P Street NW, Washington, D.C. 20001. Each unit is a residential rental unit. The four units are Plaintiffs' only assets.
3. Plaintiffs have paid every regular monthly common-expense assessment for all four units, every month, from January through September 2026. True and correct copies of the Association's ledgers for Units C01, C02, C03, and 402, which the Association provided to me with its September 25, 2026 notice, are attached as Exhibits B, C, D, and E.
4. Plaintiffs delivered the tenant lease documentation for Units C01, C02, and C03 to the Association and explained that Unit 402 was vacant. On June 8, 2026, I received

the Association's "Notice of Fine Cessation and Account Update," a true and correct copy of which is attached as Exhibit G.

5. Plaintiffs did not receive notice of, or an opportunity for, a hearing before the Board imposed the fines approved on May 26, 2026.
6. On July 15, 2026, I received the Board's "Formal Notice" concerning the June special assessment, a true and correct copy of which is attached as Exhibit F. On or about July 22, 2026, the voting rights of Units C01, C02, C03, and 402 were suspended.
7. Before September 1, 2026, Plaintiffs did / did not receive written notice stating the amount of and reasons for the September 2026 "Legal Defense" special assessment.
8. On September 25, 2026, I received the Board's "Formal Notice of Default," a true and correct copy of which, with its attached ledgers, is attached as Exhibit A.
9. **The mortgage loan.** On September 5, 2024, 14PNWDC LLC and 14PDC LLC, as co-borrowers, closed a single commercial mortgage loan in the original principal amount of $850,000. The loan is secured by one Deed of Trust and Assignment of Rents that encumbers all four units, so each unit secures the entire loan. The loan bears interest at a fixed rate of 7.25% and matures on October 1, 2054. I personally guaranteed the loan. The current principal balance is approximately $850,000. I am familiar with the terms of the loan documents, which include a Deed of Trust and Assignment of Rents, a Condominium Rider, a Promissory Note with a Prepayment Rider, and a Loan Agreement. The relevant terms are set out below.
10. **Obligations regarding association charges.** The Deed of Trust requires Plaintiffs to pay "Community Association Dues, Fees, and Assessments," which it defines as "all dues, fees, assessments and other charges that are imposed on Borrower or the

Property by a condominium association." Deed of Trust §§ (J), 4. The Condominium Rider requires Plaintiffs to "promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents." Condominium Rider ¶ A. If Plaintiffs do not, the lender may pay them, and any amount the lender pays "shall become additional debt of Borrower secured by the Security Instrument," bearing interest at the Note's Default Rate. *Id.* ¶ F. The lender may also require, at any time, that association dues be paid into escrow with the lender. Deed of Trust § 3.

11. **Events of default.** Under the Loan Agreement, an Event of Default occurs if (a) Plaintiffs fail to perform any covenant in the loan documents and the failure continues for thirty days after notice, Loan Agreement § 5.1(b); or (b) "any other lien attaches to the Property without Lender's prior written consent," *id.* § 5.1(h)(3). The second provision has no cure period. The Deed of Trust separately provides that failure to cure a breach of any covenant after notice "may result in acceleration of the sums secured by this Security Instrument and sale of the Property." Deed of Trust § 22.

12. **Consequences of an Event of Default.** Upon an Event of Default, the lender may declare the entire indebtedness immediately due and payable. Loan Agreement § 5.2(a); Note § 2.7. Interest would then accrue at the Default Rate of 12% rather than 7.25%. Note § 3.1. On acceleration, a prepayment charge applies as if the loan had been prepaid on the date of acceleration; between September 5, 2026 and September 5, 2027, that charge is 3% of the amount prepaid. Note § 2.7; Prepayment Rider ¶ 2. The lender may also invoke the power of sale against all four units. Deed of Trust § 22. Plaintiffs do not have the funds to repay the loan balance on demand.

13. **Leasing covenant.** The Loan Agreement requires Plaintiffs to "continuously engage in the businesses of ownership, leasing, maintenance, management and operation of the Property" and to "operate the Property as a residential rental property." Loan Agreement § 4.8(b). At the Association's special meeting held by Zoom on July 14, 2026, two Board members stated that the Board may adopt rules prohibiting units from being leased. A prohibition on leasing would prevent Plaintiffs from performing this covenant.

14. **Voting.** Plaintiffs' four units carry approximately 20% of the voting interest in the Association.

15. **Statement regarding dues.** In September 2026, during a conversation in a hallway at the building, Defendants Zapata-Mercado and Arshad and the Board's Secretary told me that the Board would raise every unit's monthly assessment by $500 and that they did not care. Plaintiffs' combined regular monthly assessment for the four units is $729.17 in 2026. Exs. B–E. It was $[379] when Plaintiffs acquired the units. An increase of $500 per unit would raise it to approximately $2,729 per month.

16. **Comparators.** To my knowledge, no other unit owner has been fined for failure to provide lease documentation, had voting rights suspended, or been threatened with notice to a mortgage lender.

17. **Board composition.** At the Association's election on August 10, 2025, the unit owners voted on a slate of four officers (President, Vice President, Secretary, and Treasurer) rather than electing three directors. Since that election, those four persons, including Defendants Zapata-Mercado and Arshad, have acted together as the Board of Directors and have each voted on Board resolutions, including the resolutions

imposing the fines and the litigation assessments. To my knowledge, no amendment to the Bylaws increasing the number of directors has been adopted, and the Board has not imposed a fine or any other charge on any of its members for acting as a Board not constituted as the Bylaws require.

18. Plaintiffs will continue to pay all regular monthly common-expense assessments for the four units when due. Plaintiffs are willing and able to deposit $5,000 into the Registry of the Court within five business days of an order directing them to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October, 2026,

Tom Eliopolis

______________________________

Thomas Eliopoulos II